**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Jessica Hinsley, personally and as Guardian ad litem for K.M., a minor,<br><br>     Plaintiff,<br><br>vs.<br><br>Standing Rock Child Protective Services and the Bureau of Indian Affairs,<br><br>     Defendants. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:05-cv-118 |

Before the Court is the defendants' Motion for Summary Judgment filed on November 28, 2006. The plaintiff filed a response in opposition on December 28, 2006. For the reasons outlined below, the Court grants the motion.

**I.     BACKGROUND**

The Standing Rock Sioux Tribe operates a Child Protective Services agency under a contract awarded by the Bureau of Indian Affairs. Child Protective Services investigates incidents of child neglect, child abuse, and sexual abuse of children and has the authority to take custody of abused children and place those children with other families.

The plaintiff, Jessica Hinsley ("Hinsley") contends that she was injured as a result of negligent acts or omissions on the part of the Standing Rock Sioux Tribe's Child Protective Services program. Hinsley alleges that Child Protective Services placed her brother (T.C.) in Hinsley's home without notifying her that T.C. was a child molester and, while at Hinsley's home, T.C. molested Hinsley's daughter.

1

T.C. is Jessica Hinsley's younger brother. He was in the custody of Child Protective Services until his eighteenth birthday. Shortly before T.C.'s eighteenth birthday, his case worker in South Dakota, Mabel Medicine Crow ("Medicine Crow"), called James McLaughlin, ("McLaughlin") an investigator for the Standing Rock Sioux Tribe Child Protective Services. Medicine Crow asked McLaughlin to do a courtesy check with Hinsley to see if T.C. could stay with her upon his release from Child Protective Services. See Deposition of James McLaughlin, pp. 7-8. Medicine Crow informed McLaughlin that while T.C. was a minor, he had abused young girls at one of the foster homes he had been placed at in South Dakota. Child Protective Services removed T.C. from that foster home and subsequently placed him in a group home in Huron, South Dakota.

McLaughlin contends that he drove out to Hinsley's residence sometime in August 2004 and asked Hinsley if she was willing to have her brother, (T.C.), come and live with her after he turned eighteen and was released from Child Protective Services. McLaughlin contends that he informed Hinsley that T.C. had sexually abused young children while he had lived in a foster home in South Dakota and that T.C. should not be left alone with young children because he may sexually abuse them. In his deposition, McLaughlin states that he told Hinsley that T.C. "shouldn't be trusted with little kids, don't leave him, don't let him baby-sit your kids or he can't be trusted with little kids, that he might sexually abuse them." See Deposition of James McLaughlin, p. 13. Hinsley contends that McLaughlin never drove out to meet with her, but instead McLaughlin simply called her at her place of employment. Hinsley also contends that McLaughlin never informed her of T.C.'s dangerous propensities nor did McLaughlin ever warn her not to leave her children alone with T.C.

On August 20, 2004, the Standing Rock Sioux Tribal Court issued an order relieving Child Protective Services of custody, control, and supervision of T.C. as of August 22, 2004 - T.C.'s

eighteenth birthday. Hinsley contends that she had neither seen nor was she aware of the court order releasing T.C. from Child Protective Services custody until after this lawsuit was commenced. See Deposition of Jessica Hinsley, p. 16; see also Docket No. 25. Hinsley contends that she believed T.C. was formally placed into her home. See Docket No. 25.

The Government argues that no representations were ever made to Hinsley that a formal placement of T.C. was being made into her home. See Docket No. 24-1. Although Hinsley asserts that she believed that T.C. was formally placed in her home by Child Protective Services, Hinsley acknowledges that she voluntarily accepted T.C., that she did not sign a placement agreement, and that she did not receive any payments or followup visits or contact with Child Protective Services. See Deposition of Jessica Hinsley, p. 19. The only contact between Hinsley and Child Protective Services after T.C. moved in with her was when Hinsley contacted Child Protective Services to see if T.C. needed to see a doctor and to say she needed a social security card and other items so T.C. could go to school. Child Protective Services informed Hinsley that she was not entitled to T.C.'s medical background, and Hinsley was only provided with T.C.'s birth certificate. See Deposition of Hinsley, pp. 46-47.

The Government contends that it should be granted summary judgment for two reasons: (1) the discretionary function exception to liability under the Federal Tort Claims Act bars Hinsley's claims; and (2) the Government did not have a duty to warn Hinsley about T.C's dangerous propensities.

**II.     LEGAL DISCUSSION**

### A.   STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Graning v. Sherburne County, 172 F.3d 611, 614 (8th Cir. 1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R. Civ. P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### B.   DISCRETIONARY FUNCTION EXCEPTION

The Federal Tort Claims Act waives the federal government's sovereign immunity for certain torts committed by government employees. 28 U.S.C. 1346(b); Demery v. U.S. Dept. of Interior, 357 F.3d 830, 832 (8th Cir. 2004). The Federal Tort Claims Act allows suits against the United

States but only to the extent that a private person, under like circumstances, would be liable to the claimant. Id. Thus, the actions of Standing Rock Child Protective Services and the BIA can expose the Government to tort liability. However, the waiver of sovereign immunity under the Federal Tort Claims Act is limited. Congress has excepted from this limited waiver "[a]ny claim... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If a case falls within this statutory exception to the Federal Tort Claims Act, the Court lacks subject matter jurisdiction. See Feyers v. United States, 749 F.2d 1222, 1225 (6th Cir. 1984) cert. denied, 471 U.S. 1121, 1125 (1985).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Dykstra v. U.S Bureau of Prisons, 140 F.3d 791, 795 (8th Cir. 1998). Its purpose is to prevent "judicial second-guessing of legislative and administrative decisions grounded in social, economic, and policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 323 (1991). When properly construed, it "protects only governmental actions and decisions based on considerations of public policy." Id; see Kane v. U.S.,15 F.3d 87, 89 (8th Cir. 1994) (day- to-day decisions, made in furtherance of the policy, may be protected under the exception). Its application is a jurisdictional issue which precedes any negligence analysis. Johnson v. U.S., Dept. of Interior, 949 F.2d 332, 335 (10th Cir. 1991). The applicability of the discretionary function exception is governed by the nature of the conduct at issue, rather than the status of the actor. Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988).

The United States Supreme Court has articulated a two-part test to be applied in determining whether a particular claim falls under the discretionary function exception to the waiver of sovereign immunity.  See United States v. Gaubert, 499 U.S. 315 (1991); Berkovitz by Berkovitz v. United States, 486 U.S. 531 (1988).  To take advantage of the exception, it is incumbent on the Government to show that the employee's action "involve[d] an element of judgment or choice."  486 U.S. 531, 536.  If a statute, rule, regulation, or a specific policy dictates the employee's actions, then it cannot be said the employee was exercising discretion.  As a result, the exception to the waiver of sovereign immunity does not apply.  Demery v. U.S. Dept. of Interior, 357 F.3d 830, 832 (8th Cir. 2004).  Thus, the first part of the test requires a determination of whether the challenged act or omission violated a specific statute, rule, regulation, or policy that did not allow for judgment or choice.  If so, the discretionary function exception does not apply.

If the challenged conduct is determined to be discretionary, the second part of the test is to determine whether the conduct is "of the kind that the discretionary function exception was designed to shield."  United States v. Gaubert, 499 U.S. 315, 322-323.  As previously noted, when Congress enacted the Federal Tort Claims Act, its desire was to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy.  The judgment or decision need only be susceptible to policy analysis, regardless of whether social, economic, or political policy was ever actually taken into account, in order for the exception to be triggered.  C.R.S. by D.B.S. v. United States, 11 F.3d 791, 796 (8th Cir. 1993).

1) **WHETHER THE ACTION IS A MATTER OF JUDGMENT OR CHOICE FOR THE EMPLOYEE**

The Court's initial inquiry concerning whether the action is a matter of judgment or choice for the acting Government employee is mandated by the language of the discretionary function exception. Berkowitz v. U.S., 486 U.S. 531, 536 (1988). "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." Id. Thus, when a federal statute, rule, regulation, or policy specifically prescribes a course of action for an employee to follow, the exception will not apply. Id. Conversely, when no federal mandate is found, the employee's conduct is considered to be the product of judgment or choice and the Court's initial inquiry is satisfied. For the purposes of a summary judgment motion, the facts are viewed in a light most favorable to the plaintiff. Accordingly, for the purpose of this motion, the Court assumes that McLaughlin did not warn Hinsley regarding T.C.'s dangerous propensities of sexual abuse towards children.

Hinsley contends that there are state and federal statutes that Child Protective Services must follow when placing a child which provide the framework by which Child Protective Services should have acted. See N.D. Cent. Code § 14-09-06.1 and The Indian Welfare Act, 25 U.S.C. § 1915(b). However, these statutes express the policy that the best interests of the child should be considered in the placement of a child by the court or agency. The statutes do not mandate procedures for warning the public or third parties upon the discharge of an individual from agencies such as Child Protective Services. See N.D. Cent. Code § 14-09-06.1 (providing that "[a]n order for custody of an unmarried minor child ... must award the custody of a child to a person, agency, ...as will, in the opinion of the judge, promote the best interests and welfare of the child."); 25 U.S.C. § 1915(b) (providing that [a]ny child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family...."). These statutes simply require that the entity making a placement consider the best interests of the child, and do not regulate

7

or control considerations relating to the impact placement may have on third parties into whose home the child is placed.

To establish that the actions complained of do not involve an element of judgment or choice, the burden is on the plaintiff to link their claims with any facts, statutes, rules, regulations, or policies that would call into doubt the discretionary nature of the government employee's actions. Johnson v. United States, 47 F. Supp. 2d 1075, 1080 (S.D. Ind. 1999). Neither party has cited to any specific statutes, rules, regulations, or policies which provide any guidance, or in any way limit the discretion of Child Protective Services under the facts and circumstances presented in this case. Further, the Court is unaware of any specific statutes, rules, regulations, or policies which mandate that a warning be conveyed to third persons about the dangerous propensities of a child when that child is released from the custody of a protective agency.

The Court concludes that in the absence of any specific statute, rule, regulation, or policy which mandates a warning to third persons, the actions of Child Protective Services' employees must be considered a product of judgment or choice. There are no federal or state statutes, rules, regulations, or policies which specifically prescribe a course of action for the employee to follow. The Court finds that Child Protective Services' employees acted within their discretion in determining whether there was a need to warn third persons of T.C.'s dangerous propensities and, if so, the nature and extent of any such warning. Therefore, the first step of the discretionary function analysis is satisfied.

### 2) WHETHER THE CONDUCT IS OF THE KIND THAT THE DISCRETIONARY FUNCTION EXCEPTION WAS DESIGNED TO SHIELD

Because Child Protective Services' conduct clearly involved an element of judgment or choice, the Court must next ascertain whether that judgment "is of the kind that the discretionary function exception was designed to shield." Berkovitz v. U.S., 486 U.S. 531, 536. The Court must make that determination before concluding whether a suit is barred.

The only types of judgments that the discretionary function exception were designed to shield are "governmental actions and decisions based on considerations of public policy." Gaubert, 499 U.S. 315, 323 (1991); see Rosebush v. U.S., 119 F.3d 438, 444 (8th Cir. 1997) (explaining that the requirement for a policy nexus is an objective not a subjective one). The Court must determine whether the adjudication of Hinsley's claim would require it to second-guess a governmental policy decision. It is well-established that when a government employee is allowed to exercise discretion, it is presumed that the employee's acts are grounded in policy when exercising that discretion. Demery v. U.S. Dept. of Interior, 357 F.3d 830, 833 (8th Cir. 2004) (citing United States v. Gaubert, 499 U.S. 315, 324 (1991). It is the plaintiff who must rebut this presumption otherwise the Court is to presume the decision was based on public policy considerations. Id.

Hinsley has not addressed the second step of the discretionary function exception analysis, and has offered no facts challenging the policy-based nature of the decision whether to warn. The Government essentially contends that decisions which involve a balancing of public safety issues against the need to protect and preserve a juvenile's confidential records, are decisions based on public policy considerations which are protected from tort liability by the discretionary function exception. The Court agrees.

9

The Court concludes, as a matter of law, that decisions of Child Protective Services' employees pertaining to the discharge of T.C., and whether there was a need to warn third persons of his dangerous propensities, are directly related to policy analysis and considerations of public policy. Such decisions clearly implicate competing and legitimate concerns of public safety, the safety of third persons into whose homes an individual is placed, the need to maintain the confidentiality of a juvenile's records, and the juvenile's future interests upon release. The United States Supreme Court has made it clear that the focus of the inquiry is whether the challenged actions are "susceptible to policy analysis" and not whether they were, in fact, the result of a policy analysis. Gaubert, 499 U.S. 315, 324-325. See Hughes v. United States, 110 F.3d 765 (11th Cir. 1997).

Based on the above reasoning, the Court concludes, as a matter of law, that the Child Protective Service's challenged conduct is the type of conduct that the discretionary function was designed to protect. To conclude otherwise would be to engage in the type of "judicial second-guessing" that the discretionary function exception was designed to avoid. The Court finds that the second part of the discretionary function exception analysis has also been satisfied.

### III.   CONCLUSION

This case clearly falls within the statutory exception to the Federal Tort Claims Act and, as such, the Court lacks subject matter jurisdiction. There are no specific federal or state statutes, rules, regulations, or policies that required Child Protective Services to warn others of the dangerous propensities of an individual who was gratuitously or formally placed in a home after being discharged from the agency. Each of the decisions made by Child Protective Services (whether to

warn or not and, if so, the nature and extent of the warning) are decisions protected by the discretionary function exception.  Each of the decisions are discretionary in nature and grounded in considerations of public policy.  The Court is very sympathetic to Ms. Hinsley and her family, but the case law in the Eighth Circuit is clear.  The Court finds that it is unnecessary to address the Government's remaining grounds for summary judgment.

The  Court **GRANTS** the Defendants' Motion for Summary Judgment (Docket No. 19) and Hinsley's complaint is **DISMISSED** for lack of subject matter jurisdiction.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 22nd day of January, 2007.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court